*1094 OPINION OF THE COURT
Edward J. Greenfield, J.
The issue presented on this motion is whether creditors who have claims against a foreign bank can assert those claims against the assets of its New York branch bank which is in the hands of the New York State Superintendent of Banks for liquidation, and whether the funds in the hands of the liquidator are subject to attachment and execution.
On March 28, 1980, the authorization of the Banco Intercambio Regional (BIR), one of the largest banks in Argentina, to operate as a commercial bank was revoked by Argentine authorities. The Superintendent of Banks of the State of New York thereupon took control of the business and property of the New York branch of the bank (hereinafter BIRNY) pursuant to sections 606 and 618 of the Banking Law.
The Superintendent marshaled the assets of BIRNY and has been dealing with the claims against it under the supervision of this court. This successful and orderly liquidation has presented the court with the unusual circumstance that the Superintendent has a surplus of over $19,000,000 in excess of all liabilities. The circumstances of BIR in Argentina are exactly the opposite. The only preferred creditor of BIR in Argentina, the Banco Central, is owed in excess of $537,000,000 and it appears unlikely that any money will be available there for payment of claims by unsecured creditors.
Pursuant to section 606 (4) (a) of the Banking Law, the Superintendent is authorized to pay claims of "preferred” creditors, i.e., those claims arising out of transactions with the New York branch (BIRNY) which would represent enforceable legal obligations of BIRNY as if the branch were a separate and independent legal entity in New York.
Section 606 (4) (b) provides in pertinent part: "Whenever the claims of such preferred creditors, together with interest thereon, and the expenses of the liquidation have been paid in full or properly provided for, the superintendent upon the order of the supreme court shall turn over the remaining assets to the principal office of such foreign banking corporation, or to the duly appointed domiciliary liquidator or receiver of said foreign banking corporation.”
Some creditors filed claims with the Superintendent. Where the Superintendent determined that the claims arose out of transactions with the New York branch of the BIR (BIRNY) such claims were accepted in whole or in part. All accepted *1095 claims have been paid. Some of the rejected claimants commenced actions in this court against the Superintendent. These claims, by creditors claiming a preferred status, exceed $1.8 million exclusive of interest and costs.
In addition to the claims of creditors who claim a preference there are actions, judgments, attachments and executions in this State against BIR, i.e., claims not related to transactions with the New York branch (hereinafter BIR creditors). These claims exceed $2.4 million exclusive of interest and costs.
The Superintendent now seeks to turn over $5,000,000 into court. That sum is sufficient to satisfy the claims of the BIR creditors if the court determines that the BIR creditors should be paid from this sum. The Superintendent takes no position as to the entitlement of the BIR creditors to that sum and has retained sufficient funds to satisfy all claims by BIRNY creditors as well as costs of liquidation.
The Superintendent moves to vacate all attachments and executions filed against the property held, and to turn over $5,000,000 to this court. This court is called upon to determine whether it should distribute the money to either the BIR liquidator in Argentina, or to BIR creditors making claims in New York.
The Argentine liquidator of the BIR cross-moves for an order directing the Superintendent to turn over to it the $5,000,000 directly and vacating all judgments and attachments against the surplus assets of BIRNY.
The receiver of the property of the American Bank and Trust Co. cross-moves for an order extending the effective date of an execution levied upon the Superintendent. The BIR creditors oppose the cross motion to turn over the funds directly to the Argentine liquidator and seek satisfaction on their judgments first.
Initially, it should be noted that section 606 (4) (b) of the Banking Law leaves no discretion to the Superintendent to pay claims of nonpreferred creditors, but directs that money in excess of that necessary to satisfy claims of preferred creditors and liquidation expenses "shall” be turned over to the principal office of the foreign banking corporation.
Recognizing the statutory mandate, the question presented is whether this court should nonetheless recognize attachments against excess property held by the Superintendent and direct payment from those assets held in this State to satisfy nonpreferred creditors of the foreign bank.
*1096 In Orvis v Bell (182 Misc 616 [1944], affd without opn 268 App Div 851, affd without opn 294 NY 844), this court dismissed a claim by nonpreferred creditors who asserted they were entitled to payment out of the surplus assets of a New York branch bank in liquidation, because the Superintendent would be required eventually to turn over surplus funds to the home office of the foreign bank. The court there did not really analyze the Banking Law issue, noting in passing that a claim for excess funds was not a "theory of their complaint”. Hence, it cannot be said that the issue has really been previously explored.
The parties have not brought to the attention of this court any other case on facts comparable to those presented here, since indeed the existence of a surplus after liquidation appears to be rare, and a claim for those funds is unique. It is therefore relevant to inquire as to the operation and scope of section 606 of the Banking Law.
Section 606 of the Banking Law permits the Superintendent, for a variety of reasons, to take possession of any banking organization licensed to do business in the State, including the circumstance, as in this case, that a foreign bank licensed to do business in this State is in liquidation in its domicile.
Pursuant to that section, the Superintendent collects the property in this State of foreign banks licensed to do business here to provide for the orderly disposition of claims arising from transactions with the New York branch or agency of the foreign bank.
The statutory powers of the Superintendent afford protection to "preferred” creditors of the New York branch, but creditors of the foreign parent banking corporation or any of its branches or agencies except those licensed to do business in this State are expressly excluded from such protection.
Although it is evident that this legislation was not passed for their benefit, the BIR creditors maintain that this court should not permit the BIRNY moneys to be turned over to the foreign liquidator, since the Argentine bankruptcy law, in effect at the time BIR went into liquidation, gave a preference to Argentine creditors over others, in contravention of the public policy of this State.
From what has previously been said, it is obvious that the Superintendent does not collect moneys to provide a deep *1097 pocket from which every unsatisfied creditor can obtain payment. The Superintendent holds these moneys only insofar as is necessary to protect the interest of creditors of the New York agency or branch (the "preferred” creditors).
Moreover, foreign banks which are permitted to do business in this State are closely regulated, and required to maintain substantial reserves. (Banking Law § 202.) Those foreign banks which seek to do business here assume the risk that the Superintendent might take possession of their assets in this State, to satisfy obligations incurred here. They should not assume the risk that moneys collected here by the Superintendent will be used to satisfy obligations incurred elsewhere. If foreign banks are not assured that their financial exposure is limited to New York transactions they would have an incentive for avoiding the minimum financial security standards required in this State, to the prejudice of preferred creditors.
Lastly, it should not be forgotten that the BIR creditors present claims arising out of transactions with the foreign parent or branches other than those in this State. When they entered into these transactions they assumed the risk that Argentine law might apply. They did not seek the protection that the laws of this State might afford them had they entered into the transaction here. They should not now be permitted to invoke the public policy of this State to attach assets that were never intended to be retained for their benefit.
Attachments and executions by nonpreferred creditors levied against excess funds held by the Superintendent are inconsistent with the legislative mandate, and unnecessarily burden the liquidation proceedings. Similarly, attachments or executions filed by preferred creditors are unnecessary, since the Superintendent has reserved sufficient funds to pay any sum this court may find they are entitled to.
The motions are decided as follows: the Superintendent is directed to turn over the sum of $5,000,000 to the Argentine liquidator directly. Such funds shall not be subject to seizure or levy by any creditor in this State. All attachments and executions filed against the Superintendent are vacated.
All creditors who claim preferred status are directed to complete any outstanding discovery and file a note of issue within 60 days of service of this order.